**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-6194

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

LEXY LEONEL HERRERA-PAGOADA, a/k/a Lexy Leonel Herrera, a/k/a Juan Villa Hermosa,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Malcolm J. Howard, Senior District Judge. (7:15−cr−00104−H−1)

Argued: May 4, 2021                                        Decided: September 16, 2021

Before KING, DIAZ, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge King and Judge Floyd joined.

**ARGUED:** Nardine Mary Guirguis, GUIRGUIS LAW, PA, Raleigh, North Carolina, for Appellant. Dennis Duffy, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Lexy Leonel Herrera-Pagoada, a native, and citizen of Honduras, appeals the dismissal of his 28 U.S.C. § 2255 habeas petition challenging his sentence for felony illegal reentry of an alien who has previously been removed, in violation of 8 U.S.C. § 1326(a) and (b). He claims that his trial counsel was ineffective when counsel failed to recognize that Herrera-Pagoada was innocent of illegal reentry because the underlying removal order was invalid.

But the district court found that Herrera-Pagoada couldn't collaterally attack (and thereby invalidate) that order because he hadn't satisfied 8 U.S.C. § 1326(d)'s three requirements for doing so. We agree that, at a minimum, Herrera-Pagoada failed to satisfy the third condition: that "the entry of the removal order was fundamentally unfair." *Id.* at § 1326(d)(3). Accordingly, we affirm.

I.

This case turns on the application of 8 U.S.C. § 1326. Under subsections (a) and (b) of that provision, "any alien who has been denied admission, excluded, deported, or removed . . . and thereafter enters, attempts to enter, or is at any time found in, the United States" is subject to various criminal penalties, unless he qualifies for certain exceptions not relevant here.

Subsection (d), however, permits an alien to collaterally attack a removal order in a criminal proceeding under § 1326 if the alien proves that: (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2)

"the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." *Id.* at § 1326(d). "These requirements are listed in the conjunctive, so a defendant must satisfy all three in order to prevail." *United States v. Wilson*, 316 F.3d 506, 510 n.1 (4th Cir. 2003), *overruled on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006).

## A.

Herrera-Pagoada has been arrested after illegally entering the United States not once, not twice, but six times. The first time, he was arrested in North Carolina while in possession of between two hundred and four hundred grams of cocaine. He pleaded guilty to trafficking in cocaine by possession and was released on bond. But he failed to appear for sentencing and committed several misdemeanors in North Carolina before authorities sought to remove him.

At his removal hearing in 2010, Herrera-Pagoada admitted that he had illegally entered the United States. The immigration judge ("IJ") informed Herrera-Pagoada that he might be eligible for "non-[lawful permanent resident ("LPR")] cancellation," a form of discretionary relief through which certain inadmissible or deportable nonpermanent resident aliens may obtain LPR status. *See* 8 U.S.C. § 1229b(b)(1). The IJ offered Herrera-Pagoada a continuance, an application form, and a list of attorneys if he wished to pursue this option. Herrera-Pagoada replied, "No, I want to go back to my home country." *United*

3

*States v. Herrera-Pagoada*, No. 7:15-CR-104-1H, No. 7:19-CV-131-H, 2020 WL 205602, at *1 (E.D.N.C. Jan. 13, 2020).[1]

At that point, the IJ concluded that "removability has been established by clear and convincing unequivocal evidence, respondent . . . was offered non-LPR cancellation; he has chosen against it; . . . [and he] does not otherwise qualify for any other relief." *Id.* The IJ thus ordered Herrera-Pagoada removed and advised him that he could appeal this decision, but that if he accepted it as final, it would become final as of that day. Herrera-Pagoada replied, "That's fine." *Id.* He was duly deported.

B.

Undeterred, Herrera-Pagoada reentered the United States and was eventually arrested in 2012 for absconding from North Carolina. He was sentenced to 35–42 months in prison for his drug crimes. After serving his prison sentence, Herrera-Pagoada was again deported. Not long after, Herrera-Pagoada entered the United States a third time and was again deported.

The fourth time Herrera-Pagoada entered the United States, he was arrested in North Carolina and charged with felony illegal reentry of an alien who has previously been removed, in violation of 8 U.S.C. § 1326(a) and (b). James Todd represented him. Herrera-Pagoada pleaded guilty, and the court sentenced him to 11 months in prison and 3 years of supervised release with the special condition that upon completion of the term of

---

[1] The joint appendix includes an audio recording of the removal hearing. For ease of reference, we quote to the district court's decision, which transcribes portions of the recording.

imprisonment, he was to be deported and would be required to remain outside the United States. The judgment became final in 2016. Herrera-Pagoada didn't appeal, so after serving his sentence, he was deported yet again.

Herrera-Pagoada entered the United States for a fifth time and was arrested in California. Marcus Bourassa represented him on charges of misdemeanor improper entry, in violation of 8 U.S.C. § 1325, and felony illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b). The government later dismissed the felony charge, and Herrera-Pagoada pleaded guilty to the misdemeanor. He was sentenced to time served.

C.

While the California federal charges were pending, Herrera-Pagoada's probation officer in North Carolina moved to revoke his supervised release for illegally reentering the country. Following his sentencing in California, Herrera-Pagoada was transferred to North Carolina.

It was there in 2019 that Herrera-Pagoada filed his 28 U.S.C. § 2255 petition.[2] He challenged his 2016 sentence for illegal reentry claiming that Todd had been ineffective, and attached an affidavit from Todd, in which Todd described how his performance fell short of Bourassa's.

In particular, Todd discussed an email that he received from Bourassa earlier that year about how Bourassa had persuaded the government to dismiss the felony illegal

---

[2] Herrera-Pagoada was initially pro se, but the district court later appointed counsel for him.

reentry charge in California. According to Todd, Bourassa had obtained a recording of Herrera-Pagoada's deportation hearing, which revealed that the IJ "did not adequately inform Mr. Herrera-Pagoada of the option to seek voluntary departure"[3]—another form of discretionary relief—"in lieu of an order of deportation, which legally invalidates the order of deportation." J.A. 33.

Todd attested that "Mr. Bourassa successfully persuaded the Government to dismiss the illegal re-entry charge" in California "based on th[is] prejudicial deficiency" during Herrera-Pagoada's removal hearing. J.A. 34. Todd asserted that had he conducted the same investigation as Bourassa, he likewise would have obtained the dismissal of the illegal reentry charge "given the material and prejudicial omission of adequately informing Mr. Herrera-Pagoada of the voluntary departure option." *Id.*

Thus, Herrera-Pagoada argued that there was "an issue regarding his guilty plea" that "he was not made aware of . . . until recently" and "affect[ed] his legal status" because he "was legally innocent of the underlying charge and his attorney should have known that." J.A. 24, 29. The government moved to dismiss the § 2255 petition because (1) it

---

[3] "The Attorney General may permit an alien voluntarily to depart the United States" subject to certain exceptions not relevant here. 8 U.S.C. § 1229c(a)(1). When an alien is granted voluntary departure, he must leave the country within a prescribed time period but "sidestep[s] some of the penalties attendant to deportation." *See Dada v. Mukasey*, 554 U.S. 1, 11–12 (2008). An alien may apply for voluntary departure (1) in lieu of being subject to removal proceedings; (2) before the conclusion of the removal proceedings; and (3) at the conclusion of the removal proceedings. *See In re Arguelles-Campos*, 22 I. & N. Dec. 811, 814–17 (BIA 1999). The parties agree that Herrera-Pagoada was eligible for only the second, so "voluntary departure" refers specifically to "pre-conclusion voluntary departure" throughout this opinion.

6

was untimely, (2) Herrera-Pagoada failed to raise a § 1326(d) challenge at trial or on direct appeal and thus the claim was procedurally defaulted, and (3) it failed to state a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

The district court granted the government's motion to dismiss Herrera-Pagoada's habeas petition. It agreed that Herrera-Pagoada had filed his petition outside the one-year limitations period provided in 28 U.S.C. § 2255(f)(1) but pointed out that "a showing of actual innocence would lift the procedural bar." *Herrera-Pagoada*, 2020 WL 205602, at *3. The court then explained that although Herrera-Pagoada was trying to prove his innocence of illegal reentry by invalidating the underlying removal order, he couldn't do so under 8 U.S.C. § 1326(d).

As to the first two prongs, the court noted that Herrera-Pagoada didn't provide any relevant evidence in his § 2255 petition or in his response to the motion to dismiss. In fact, although Todd's affidavit cited to § 1326(d), Herrera-Pagoada's briefing below didn't mention that statute.[4] The court also observed that after the IJ had informed Herrera-Pagoada of his right to appeal the removal order, he waived his appeal rights. Herrera-Pagoada thus "failed to carry his burden to satisfy the first two prongs." *Herrera-Pagoada*, 2020 WL 205602, at *4.

---

[4] Although the district court discussed only the statute of limitations as a procedural bar to Herrera-Pagoada's habeas petition, we may affirm on any ground apparent in the record. *See Strawser v. Atkins*, 290 F.3d 720, 728 n.4 (4th Cir. 2002). Accordingly, we later address Herrera-Pagoada's failure to raise his arguments as to § 1326(d) at trial, in a direct appeal, or before the court below.

The district court next turned to the third prong. It acknowledged our precedent holding that "[t]o demonstrate fundamental unfairness, a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005) (cleaned up). The court determined that Herrera-Pagoada "ha[d] not met his burden to establish a due process violation for the IJ's failure to advise petitioner of discretionary relief." *Herrera-Pagoada*, 2020 WL 205602, at *4.

To that end, the district court observed that although "[t]he Fourth Circuit has not specifically addressed" whether such an omission by an IJ is a due process violation, we did decide in *Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002), that "the discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause." *Herrera-Pagoada*, 2020 WL 205602, at *5 (quoting *Smith*, 295 F.3d at 429). The district court reasoned that if an alien has no protected right to discretionary relief under *Smith*, he also has no protected right to be advised on the availability of such relief. *Id.* at *6. And "[a]s there was no due process violation," the court didn't address "whether [Herrera-Pagoada] suffered actual prejudice." *Id.*

The court thus concluded that Herrera-Pagoada didn't establish any of § 1326(d)'s three prongs. As a result, Herrera-Pagoada couldn't collaterally attack the removal order and show that he's actually innocent of illegal reentry or that Todd's failure to establish such innocence resulted in prejudice under *Strickland*. So the court dismissed his § 2255 petition. But the court granted Herrera-Pagoada a certificate of appealability given the

8

"issue of first impression in the Fourth Circuit."[5]  J.A. 75; *see also* 28 U.S.C. § 2253(c)(1)(B) ("Unless a . . . judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255.").

This appeal followed.

## II.

Herrera-Pagoada contends that Todd rendered ineffective assistance of counsel by failing to obtain a dismissal of his illegal reentry charge in 2016 based on the invalidity of the underlying removal order.  He also asserts that he can overcome any procedural barriers to his habeas petition because he's entitled to equitable tolling and he's actually innocent of illegal reentry.

---

[5] The district court also determined that Herrera-Pagoada had violated the terms of his supervised release, revoked the rest of his supervised release term, sentenced him to time served, and ordered him deported.  Even though Herrera-Pagoada is no longer in custody for the sentence challenged in his § 2255 motion, this appeal isn't moot because "he is unmistakably affected by the legal implications of our decision." *Smith*, 295 F.3d at 428 (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *see also id.* ("If he prevails, there is a possibility he can beneficially unravel his untoward immigration status. . . . [so] we have not lost jurisdiction over this appeal."); *Broughton v. State of N.C.*, 717 F.2d 147, 148–49 (4th Cir. 1983) ("Where the criminal conviction, for example, results in the continued denial of important civil rights, . . . [or] may result in an enhanced sentence should the petitioner later be convicted of another crime, [his] stake in habeas relief permits the court to exercise its judicial function long after [he] has been freed.").

Herrera-Pagoada has since been arrested a sixth time in the United States and has again pleaded guilty to felony illegal reentry.

To support his claim of actual innocence, Herrera-Pagoada argues (for the first time) that he meets § 1326(d)'s three requirements for collaterally attacking a removal order. He claims that he's excused from the first requirement (administrative exhaustion) and meets the second requirement (deprivation of judicial review) because the IJ didn't inform him of his eligibility for voluntary departure before he renounced his appeal rights, so his appeal waiver is invalid. And he contends that he meets the third requirement (fundamental unfairness) because the agency's rules require IJs to advise aliens of available discretionary relief, *see* 8 C.F.R. § 1240.11(a)(2), and the breach of this rule violated his due process rights and prejudiced him by changing the outcome of his hearing, which could have ended in voluntary departure rather than removal.

But even if tolling applied here (which it doesn't), and Herrera-Pagoada preserved his § 1326(d) arguments (which he didn't), we agree with the district court that an alien has no due process right to be advised of discretionary relief. Herrera-Pagoada thus can't establish fundamental unfairness and thereby collaterally attack his removal order, show that he's innocent of illegal reentry, and pursue his ineffective-assistance-of-counsel claim on the merits.

## A.

We begin with the procedural impediments to reviewing Herrera-Pagoada's petition on the merits. In an appeal from the denial of a § 2255 petition, we review the legal issues de novo. *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). But habeas review is "an extraordinary remedy" that should not take the place of an appeal. *Bousley*

*v. United States*, 523 U.S. 614, 621 (1998) (cleaned up). As a result, "the circumstances under which a guilty plea may be attacked on collateral review" are "strictly limited." *Id.*

Herrera-Pagoada's claim is procedurally barred twice over and would normally be dismissed. First, as the district court recognized, he filed his petition beyond the one-year limitations period. *See* 28 U.S.C. § 2255(f)(1). Second, he never raised his § 1326(d) arguments before the district court. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("[I]ssues raised for the first time on appeal generally will not be considered."). Although Herrera-Pagoada claimed he was innocent of illegal reentry, he never identified § 1326(d) as the vehicle for his collateral attack on his removal order, let alone explained how he meets its three requirements.[6] *See CoreTel Va., LLC v. Verizon Va., LLC*, 808 F.3d 978, 988 (4th Cir. 2015) ("[T]o preserve an argument for appeal . . . the party must raise the argument in a manner sufficient to alert the district court to the specific reason the party seeks relief." (cleaned up)).

Resisting this result, Herrera-Pagoada argues that he's entitled to equitable tolling. But even if tolling applied, it wouldn't excuse Herrera-Pagoada's failure to raise his arguments in the district court. And in any event, his circumstances don't warrant tolling.

---

[6] The government maintains that Herrera-Pagoada's petition is also procedurally barred because he didn't make his § 1326(d) argument at trial or on direct appeal. But Herrera-Pagoada's claim is that trial counsel rendered ineffective assistance by failing to make the argument. *See United States v. Carthorne*, 878 F.3d 458, 461 (4th Cir. 2017) ("[T]rial counsel rendered ineffective assistance by failing . . . to make an obvious objection."). And "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

11

A habeas petitioner "is entitled to equitable tolling [of the statute of limitations] only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up); *see also Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001) ("[E]quitable tolling is available only in those rare instances where— due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." (cleaned up)).

Herrera-Pagoada complains that he couldn't pursue his ineffective-assistance-of-counsel claim sooner because he was removed from the country and didn't learn of Todd's error until he saw Bourassa's email. But "[a]liens who are removed may continue to pursue" legal remedies available in the United States. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Moreover, Bourassa's email revealed no new facts. That Herrera-Pagoada didn't recognize the potential legal significance of facts he's known since his 2010 removal hearing until 2019 is neither suggestive of his diligence nor "extraordinary nor a circumstance external to his control." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *see also id.* ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.").

In these circumstances, we may review a habeas petition only when there has been a "fundamental miscarriage of justice." *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Muth*, 1 F.3d at 250. To establish a fundamental miscarriage of justice, a prisoner

12

must show "either cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 U.S. at 622.

Herrera-Pagoada hasn't offered any cause for his delay apart from those he pressed when arguing for equitable tolling. But cause sufficient to excuse a procedural default is similar to tolling in that it "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Thus, for substantially the same reasons that Herrera-Pagoada's circumstances don't entitle him to tolling, they also don't establish cause and prejudice.

That leaves actual innocence as the sole remaining avenue for showing a fundamental miscarriage of justice. To do that, Herrera-Pagoada "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" of illegal reentry. *Bousley*, 523 U.S. at 623 (cleaned up).

We turn to that analysis.

### B.

Herrera-Pagoada seeks to prove his actual innocence by collaterally attacking the removal order underlying his illegal reentry conviction. To do that, he must show that (1) he "exhausted any administrative remedies that may have been available"; (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." *Id.* at § 1326(d).

Herrera-Pagoada asserts that the IJ's failure to advise him that he was eligible for voluntary departure before ordering his removal renders his appeal waiver invalid, which

13

excuses him from establishing administrative exhaustion and shows that he was deprived of judicial review.[7] The government responds that, because the IJ accurately informed Herrera-Pagoada of his right to appeal, his appeal waiver was binding and forecloses his belated attempt to invalidate his removal order.[8] Because we resolve this case on the third prong, we don't address these arguments further.

Recall that to establish fundamental unfairness under § 1326(d)'s third prong, a defendant must show that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *See El Shami*, 434 F.3d at 664 (cleaned up). Herrera-Pagoada says that the IJ violated his due process rights by failing to explain his eligibility for voluntary departure, in

---

[7] This question is the subject of a circuit split that we haven't yet weighed in on. *Compare United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004) (holding that an alien is excused from establishing the first prong and satisfies the second when he isn't informed of his eligibility for discretionary relief), *and United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004) (same), *with Richardson v. United States*, 558 F.3d 216, 223 (3d Cir. 2009) (holding that such an alien hasn't satisfied or been excused from establishing the first two prongs); *United States v. Cordova-Soto*, 804 F.3d 714, 722 (5th Cir. 2015) (same); *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) (same). *See also United States v. Luna*, 436 F.3d 312, 319–23 (1st Cir. 2006) (recognizing the circuit split on § 1326(d)'s first two prongs but deciding the case on the third prong).

[8] The government also argues that the Supreme Court's recent decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), casts doubt on a court's ability to excuse a defendant from the first two prongs of § 1326(d). In that case, the Court rejected a sister circuit's rule excusing defendants "from proving the first two requirements of § 1326(d) if they were not convicted of an offense that made them removable," because "the *substantive* validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies . . . or was deprived of the opportunity for judicial review." *Id.* at 1621 (cleaned up) (emphasis added). But the Court didn't consider the effect of an invalid appeal waiver on an alien's burden to prove the first two prongs of § 1326(d). We too decline to reach the issue.

contravention of the agency's own regulations. Herrera-Pagoada further contends that this omission prejudiced him when he "received an order of removal instead of an order of voluntary departure," despite the IJ's apparent willingness to consider granting him some form of discretionary relief. Appellant's Br. at 12. We agree with the district court, however, that Herrera-Pagoada had no due process right to be advised of discretionary relief, so his attempt to collaterally attack his removal order fails.

"[T]o advance a due process claim, [an alien] must first establish that he had a property or liberty interest at stake." *Smith*, 295 F.3d at 429. But "discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause" because there's no "*entitlement* to the benefit." *Id.* at 429–30; *see also Appiah v. INS*, 202 F.3d 704, 709 (4th Cir. 2000) (explaining that an "'act of grace' that rests in the 'unfettered discretion' of the Attorney General" is "not a right protected by the Constitution" (quoting *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996)). An agency's denial of, or failure to consider, an alien's application for discretionary relief therefore doesn't violate his due process rights. *See Wilson*, 316 F.3d at 510.

Several of our sister circuits have also determined that an alien has no constitutional right to be informed of his eligibility for such relief. *See United States v. Soto-Mateo*, 799 F.3d 117, 123 (1st Cir. 2015); *Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.9 (3d Cir. 2005); *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002); *United States v. Estrada*, 876 F.3d 885, 888 (6th Cir. 2017); *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1020 (7th Cir. 2006); *Garcia-Mateo v. Keisler*, 503 F.3d 698, 700 (8th Cir. 2007); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc). The Ninth

15

Circuit is the outlier.[9]  *See United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013) ("[T]he IJ may violate an alien's due process rights by failing to inform the alien of apparent eligibility to apply for specified relief." (cleaned up)).

Not surprisingly, Herrera-Pagoada asks us to side with the Ninth Circuit.  That circuit's reasoning is as follows: 8 C.F.R. § 1240.11(a)(2) provides that the IJ "shall inform the alien of his or her apparent eligibility to apply for . . . [discretionary relief] and shall afford the alien an opportunity to make application during the hearing."  Because that regulation is "mandatory" and "an alien who is not made aware of his or her apparent eligibility for relief has had no meaningful opportunity to appeal the removal," an IJ's failure to so inform an alien "is a denial of due process that invalidates the underlying deportation proceeding."  *Vidal-Mendoza*, 705 F.3d at 1015 (cleaned up).

But in our circuit, "[a]n agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process."  *Bowens v. N.C. Dep't of Hum. Res.*, 710 F.2d 1015, 1019 (4th Cir. 1983) (citing *United States v. Caceres*, 440 U.S. 741, 751–52 (1979)).  And even if (as the Ninth Circuit asserts) an IJ's failure to explain voluntary departure effectively deprives an alien of the opportunity to appeal, that doesn't, by itself, mean that the underlying removal hearing violated his due process rights.  *See Wilson*, 316 F.3d at 510 n.1 ("[C]ollateral attack on a section 1326 prosecution [is

---

[9] The Second Circuit doesn't require a due process violation under § 1326(d).  Even so, it considers an IJ's failure to advise an alien of discretionary relief to be a "fundamental procedural error," which, if prejudicial, can establish fundamental unfairness under § 1326(d).  *United States v. Copeland*, 376 F.3d 61, 72 (2d Cir. 2004).

available] when the original deportation proceedings were both fundamentally unfair *and* resulted in a denial of judicial review. . . . [T]hese [are] separate requirements."); *id.* at 515 (Motz, J., concurring) ("Deprivation of judicial review does not equate to a fundamentally unfair administrative hearing.").

Nor is an alien's "liberty interest in being accorded 'all opportunity to be heard upon the questions involving his right to be and remain in the United States' before being deported" implicated here. *Rusu v. INS*, 296 F.3d 316, 321 n.8 (4th Cir. 2002) (quoting *Yamataya v. Fisher* (*The Japanese Immigrant Case*), 189 U.S. 86, 101 (1903)). To protect that interest, "[d]ue process requires, at a minimum, that an alien be given (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *United States v. Lopez-Collazo*, 824 F.3d 453, 461 (4th Cir. 2016) (cleaned up). The IJ's failure here to inform Herrera-Pagoada of voluntary departure didn't compromise any of these rights. To the contrary, Herrera-Pagoada received notice, attended a hearing before an IJ, and was heard on his removal charges.

Finally, Herrera-Pagoada suggests that the IJ's failure to inform him of available discretionary relief is a due process violation under our recent decision in *Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021). There, the petitioner alleged that the IJ failed "to fully develop the record as to the factual bases" for his asylum claim. *Id.* at 631. We agreed that the IJ didn't fulfill her "duty to develop the record," which is grounded "in 8 U.S.C. § 1229a(b)(1)." *Id.* at 624 n.11. But as to the Due Process Clause, *Quintero* only repeated the uncontroversial proposition that the denial of statutory or regulatory protections violates constitutional rights if it "deprives a noncitizen of 'a full and fair

hearing consistent with due process.'" *Id.* (quoting *Rusu*, 296 F.3d at 321 n.7). *Quintero* didn't decide whether the IJ's error there was in fact a due process violation. *See id.* And even if it had, it doesn't necessarily follow that the IJ's failure to inform Herrera-Pagoada of voluntary departure also violates due process.

*       *       *

We hold that an alien has no constitutional right to be advised of his eligibility for discretionary relief. And because Herrera-Pagoada identifies no other due process violations arising from his removal hearing, he hasn't demonstrated that the entry of his removal order was fundamentally unfair. As a result, he can't invalidate that order, and his claim of actual innocence fails.

*AFFIRMED*