**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-6888**

───────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LELIS EZEQUIEL TREMINIO-TOBAR, a/k/a Scooby, a/k/a Decente,

Defendant – Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:16-cr-00209-LO-5; 1:22-cv-00186-LO)

───────────

Submitted:  February 24, 2023                    Decided:  June 22, 2023

───────────

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

───────────

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Thacker and Judge Harris joined.

───────────

**ON BRIEF:**  Elizabeth L. Van Pelt, LIBBEY VAN PELT LAW, PLLC, Arlington, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Aidan Taft Grano-Mickelsen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Lelis Ezequiel Treminio-Tobar appeals the district court's denial of his motion for postconviction relief under 28 U.S.C. § 2255. He argues his trial counsel were constitutionally ineffective in not objecting to a duress jury instruction that didn't contain verdict-directing language. But his argument is foreclosed by our decision on his direct appeal, so we affirm.

I.

A.

A jury convicted Treminio-Tobar of conspiracy to commit kidnapping, conspiracy to commit kidnapping and murder in aid of racketeering, and kidnapping resulting in death, all based on his involvement in the brutal killing of Carlos Otero-Henriquez. Otero-Henriquez was murdered by members of MS-13 who lured him to a remote location and stabbed him to death.

Treminio-Tobar admitted to participating in the murder but said he acted under duress. He testified that he didn't want to join MS-13, actively resisted its recruitment efforts, was unaware of the plot until it was too late to escape, and participated only because he believed he would be killed if he refused. He admitted that he held Otero-Henriquez down during the murder but claimed that he merely pretended to stab him—and only after Otero-Henriquez had been fatally wounded by another gang member.

Government witnesses, including MS-13 leaders who directed the killing, provided a sharply different account. They described Treminio-Tobar as an enthusiastic member of

2

MS-13 who was eager to increase his standing in the gang and willingly participated in the murder. They said he was aware of the plot and could have left, but instead provided the knife used to kill Otero-Henriquez, stabbed him multiple times, and slashed him across the neck. They also testified that Treminio-Tobar helped cover up the killing.

Treminio-Tobar sought a jury instruction on duress, and the district court agreed one was warranted. The court's instruction, however, omitted Treminio-Tobar's proposed language, which would have informed jurors that they had a "duty to find him not guilty" if they found he acted under duress. *Compare* J.A. 994, *with* J.A. 1353–54. Treminio-Tobar's attorneys made a general objection to the final instruction but didn't specifically object to its lack of verdict-directing language.[1]

The jury found Treminio-Tobar guilty. The district court sentenced him to 120 months' imprisonment on the racketeering count and imposed life sentences on the kidnapping conspiracy and kidnapping-resulting-in-death counts, all to run concurrently.

### B.

Treminio-Tobar and several codefendants filed a direct appeal. They argued the district court's duress instruction deprived them of a fair trial because it "lacked necessary verdict-directing language informing the jury that it had to find defendants not guilty if they determined defendants acted under duress." *United States v. Lazo*, 816 F. App'x 752,

---

[1] The government objected to the court giving any duress instruction, but argued that if it did, it should use a four-element instruction based on our decision in *United States v. Perrin*, 45 F.3d 869 (4th Cir. 1995), rather than the two-element version the defense proposed. The court's final instruction largely tracked the government's proposal.

3

763 (4th Cir. 2020). They also challenged the court's omission of definitions for "reckless" and "reasonable legal alternative," terms which appeared in the duress instruction. *Id.*

We applied plain-error review because Treminio-Tobar's attorneys had only "generally objected" to the duress instruction at trial; they didn't "make the district court aware that they believed the instruction was faulty because it lacked verdict-directing language and contained undefined terms." *Id.*

We reviewed the jury instructions "as a whole and in [] context" and determined that "the jury was well aware it should acquit if it found Appellants acted under duress." *Id.* at 763–64. We observed that we had never held that verdict-directing language "is an essential component of an affirmative defense instruction." *Id.* at 764. And we emphasized that the district court accurately informed the jury (1) "that Appellants were entitled to the presumption of innocence," (2) that "it must acquit" if it "has a reasonable doubt that a defendant is guilty," (3) that "coercion or duress may provide a legal justification or excuse for the charged offense," and (4) "that the defendants only needed to establish the justification defense by a preponderance of evidence." *Id.* In a footnote, we stated that "[e]ven if we were to conclude that the omission of verdict-directing language was error, any error would not be 'plain.'" *Id.* at 764 n.3.

We also found that "the terms 'recklessly' and 'reasonable legal alternative' made sense in context." *Id.* at 765. Separately, we concluded that the Appellants couldn't show the prejudice necessary for plain error because the failure to define the terms didn't affect their substantial rights. *Id.* We found that "the Government presented the jury with overwhelming evidence that Appellants knowingly, not just recklessly, placed themselves

4

in the vehicle" used to drive Otero-Henriquez to his death. *Id.* And we determined there was "overwhelming evidence that Appellants were well aware of the gang's intentions and yet continued participating in [its] activities." *Id.* This evidence, we held, foreclosed the possibility that the jury would have acquitted the defendants had the court defined the terms in question. *Id.*

Treminio-Tobar sought, and we denied, rehearing and rehearing en banc on issues related to the lack of verdict-directing language. He also petitioned for a writ of certiorari on the sole issue of "[w]hether the Fifth Amendment Due Process right to present a defense requires the trial court to instruct the jury that it has a duty to acquit any defendant who proves an affirmative defense." J.A. 1815. The Supreme Court denied his petition.

C.

Treminio-Tobar then petitioned to vacate his conviction and sentence under 28 U.S.C. § 2255. He argued his trial counsel were constitutionally ineffective in several ways, including by "fail[ing] to object to the absence of verdict directing language" in the instruction on duress, which was his "entire defense." J.A. 1809–10. Treminio-Tobar's trial counsel filed the § 2255 petition on his behalf and said their failure to object "was not a strategic decision." J.A. 1810. They asked the district court to appoint new counsel so they wouldn't have to "habeas themselves," requesting that new counsel have the chance to amend or supplement the petition after reviewing the record. J.A. 1811.

The district court denied the petition and motion for counsel without a hearing. It refused to rely on counsel's "conclusory" evaluations of their own performance. J.A. 1853. It also found Treminio-Tobar couldn't show that his counsel performed deficiently, noting

5

that we had "upheld substantially similar language in a jury instruction for duress" in a prior case. J.A. 1855 (citing *United States v. King*, No. 95-5917, 1997 WL 407803 (4th Cir. July 22, 1997)). Finally, it held that because counsel had no "basis in Fourth Circuit precedent to find that the jury instruction was fallible," they acted reasonably in not objecting. *Id.*

We granted a certificate of appealability on a single issue: "Whether [the] district court erroneously determined counsel was not ineffective for failing to object to [a] duress jury instruction because [the] instruction lacked verdict-directing language." Dkt. No. 11.

## II.

## A.

We first address the scope of our review. Along with his argument about the lack of verdict-directing language, Treminio-Tobar asserts that the duress instruction "failed to explain how an affirmative defense operates relative to the government's burden" and "failed to define 'by a preponderance of the evidence.'" Appellant's Br. at 24–25. He argues competent counsel would have objected on these grounds as well. The government responds that Treminio-Tobar's new arguments "are not cognizable" because they go beyond the certificate of appealability and weren't raised in the district court. Appellee's Br. at 16.

We don't address issues outside the certificate of appealability, particularly when they weren't raised below. *See Appleby v. Warden, N. Reg'l Jail & Corr. Facility*, 595 F.3d 532, 535 n.3 (4th Cir. 2010) (explaining that we are "empowered to consider only the

6

specific issue or issues set forth in the certificate of appealability" (cleaned up)); *United States v. Herrera-Pagoada*, 14 F.4th 311, 318 (4th Cir. 2021) (claim procedurally barred where not raised before district court in § 2255 petition).  And separate objections must be specifically preserved, even if they relate to the same instruction.  *See United States v. Nicolaou*, 180 F.3d 565, 569 (4th Cir. 1999) ("A party wishing to preserve an exception to a jury instruction must state distinctly the matter to which he objects and the grounds of his objection." (cleaned up)).

Treminio-Tobar's § 2255 petition didn't raise any potential objections to the duress instruction beyond the lack of verdict-directing language, and his new objections aren't covered by the certificate of appealability.  So we won't consider whether counsel was ineffective in failing to make them.

## B.

Now to the sole issue properly before us.  We typically review de novo the legal conclusions in a district court's denial of a § 2255 motion.  *See United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017).  And where the district court denies relief without an evidentiary hearing, we view the facts in the light most favorable to the movant.  *United States v. Pressley*, 990 F.3d 383, 387 (4th Cir. 2021).

But collateral proceedings aren't "designed to be a rehash" of our decision on direct appeal.  *United States v. Fulks* (*Fulks II*), 683 F.3d 512, 521 (4th Cir. 2012).  Once we establish the law of the case, it generally "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal."  *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (cleaned up).  We have applied the law-of-the-case doctrine in

7

proceedings under § 2255. *See Fulks II*, 683 F.3d at 521; *United States v. Bennerman*, 785 F. App'x 958, 962 (4th Cir. 2019) (explaining that the law-of-the-case doctrine "has been applied to serve finality interests in the habeas context, where the normal preclusion principles of res judicata and collateral estoppel don't apply").

The law-of-the-case doctrine "applies both to questions actually decided as well as to those decided by necessary implication." *Lentz*, 524 F.3d at 528. There are three exceptions: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Id.* (cleaned up).

To succeed on his ineffective-assistance-of-counsel claim, Treminio-Tobar must prove that his counsel's performance was deficient, and he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our decision on direct appeal precludes him from establishing either.

1.

The government argues Treminio-Tobar can't show deficient performance because we held on direct appeal "that the jury instructions were not erroneous." Appellee's Br. at 22. We agree.

On direct appeal, Treminio-Tobar argued that the lack of verdict-directing language in the duress instruction deprived him of his due-process right to present a defense. He now argues counsel were ineffective for failing to object to the instruction on the same

8

ground. But that argument is foreclosed by our holding from his direct appeal under the law-of-the-case doctrine.

Our decision in *Fulks II* is instructive. On collateral review, Fulks argued that his capital-sentencing counsel was ineffective by not exercising peremptory challenges on three jurors who were "unfavorably disposed to [his] cause." 683 F.3d at 520. He said counsel also overlooked a fourth juror's failure to answer a questionnaire item about family members who were crime victims—as it turned out, her first husband had been murdered. *Id.* at 520–21.

Fulks's § 2255 petition followed a direct appeal in which he argued that the district court should have excluded the three unfavorable jurors for cause and granted a new trial when the fourth juror's omission was discovered. *See United States v. Fulks* (*Fulks I*), 454 F.3d 410, 427–32 (4th Cir. 2006). But we had rejected those arguments, finding the court acted within its discretion. *Id.* at 428–33.

When Fulks made the same points on collateral review, we determined that "[t]he inevitable upshot of our holding on direct appeal . . . was that the process had resulted in a fair and impartial jury." *Fulks II*, 683 F.3d at 521. When the Supreme Court denied review on Fulks's direct appeal, that holding became the "law of the case." *Id.* And from that "immutable premise," we held that Fulks could "under no circumstances demonstrate the necessary precondition for his claim, i.e., that [counsel's] actions . . . strayed beyond the bounds of reasonableness." *Id.* at 522.

Just as our finding of no error in the jury composition in *Fulks I* precluded a finding of deficient performance in *Fulks II*, our decision finding no error in the duress instruction

9

on Treminio-Tobar's direct appeal forecloses a finding of deficient performance here. On direct appeal, we reviewed the instructions holistically to confirm they were "not misleading and contained an adequate statement of the law." *Lazo*, 816 F. App'x at 764. And we found "the jury was well aware it should acquit if it found [Treminio-Tobar] acted under duress." *Id.* (cleaned up). That decides the performance inquiry, because counsel can't be ineffective for "failing to offer alternatives to proper jury instructions." *Bennett v. Angelone*, 92 F.3d 1336, 1350 (4th Cir. 1996).

Treminio-Tobar argues we aren't bound by our direct-appeal decision because "any suggestion that the instruction was not error at all is merely dicta." Appellant's Br. at 54. He relies on a footnote where we stated that "[e]ven if we were to conclude that the omission of verdict-directing language was error, any error would not be 'plain.'" *Lazo*, 816 F. App'x at 764 n.3.

But Treminio-Tobar gets it backwards: The focus of our earlier decision was whether the duress instruction fairly informed the jury that it "should acquit" if it found he acted under duress. *Id.* at 764. If there's dicta here, it's in the footnote.

Treminio-Tobar's remaining arguments are no more availing. He asserts that his former attorneys didn't make the same arguments on his direct appeal, so "the questions at hand have not been squarely addressed." Appellant's Br. at 54. Not so.

His opening brief on direct appeal claimed, "an accused is deprived of his due process right to a fair trial and right to present a defense if the jury is not instructed as to its duty to find an accused Not Guilty if it determines the accused acted under duress." Appellants' Br. at 40, *Lazo*, 816 F. App'x 752 (No. 18-4449), ECF No. 50 (emphasis

10

removed). That brief also pointed to nearly all the same cases and pattern jury instructions as he does in this appeal. *See id.* at 37–42.

It's true that Treminio-Tobar now argues (for the first time) that counsel should have objected because the instruction didn't define "preponderance of the evidence" or explain the relationship between the government's burden and an affirmative defense. But those arguments aren't covered by the certificate of appealability. And we won't depart from our prior holding based on arguments that aren't properly before us.

Nor do we agree with Treminio-Tobar's assertion that our prior decision was "dead wrong." Appellant's Br. at 55. Admittedly, many of our sister circuits include verdict-directing language in their duress pattern jury instructions. But while it may be a best practice, that doesn't make it a constitutional requirement.

In fact, none of the cases cited by Treminio-Tobar imposed a per-se requirement for verdict-directing language—each examined the effect of the alleged error in the context of all the instructions. *E.g.*, *State v. Thomas*, 868 N.E.2d 1061, 1065–66 (Ohio Ct. App. 2007) (considering the "instructions taken as a whole"). That's exactly what we did on direct appeal, finding that the totality of instructions adequately informed the jury of its duty. We won't retread the same ground now.

Treminio-Tobar doesn't offer any other reason why the law of the case shouldn't govern, and we see no reason to depart from our earlier holding. Because there was no error in the duress instruction, Treminio-Tobar can't establish deficient performance.

11

2.

Our direct-appeal decision also forecloses a finding of prejudice. The "substantial rights" prong of plain-error analysis mirrors the prejudice prong of *Strickland*'s ineffective-assistance-of-counsel inquiry. *See United States v. Rangel*, 781 F.3d 736, 745–46 (4th Cir. 2015) ("Affecting substantial rights, in most cases, means that the error must have been prejudicial: It must have affected the outcome of the district court proceeding. This outcome-based standard is similar to *Strickland's* prejudice inquiry." (cleaned up)). Both analyses require the defendant to establish "a reasonable probability" of a different result. *Id.* at 745.

We held on direct appeal that the omission of verdict-directing language from the duress instruction wasn't an error, so we didn't consider whether it affected Treminio-Tobar's substantial rights. But we did conclude that his substantial rights weren't impacted by the lack of definitions for "recklessly" and "reasonable legal alternative" in the same instruction. *See Lazo*, 816 F. App'x at 765.

That conclusion binds us here by "necessary implication." *See Lentz*, 524 F.3d at 528. The district court instructed the jury that to find Treminio-Tobar acted under duress, it had to find that he didn't "recklessly place himself in a situation where he would be forced to engage in criminal conduct." J.A. 1354. But we held on direct appeal that Treminio-Tobar couldn't "establish that the jury would have acquitted [him] had the district court defined 'recklessly' and 'reasonable legal alternative,'" because the jury saw "overwhelming evidence that [he] knowingly, not just recklessly, placed [himself] in the vehicle on the night" of the murder. *Lazo*, 816 F. App'x at 765.

12

We agree with the government that our prior decision establishes that "there was no reasonable probability that the jury would have found for [Treminio-Tobar] on one of the required factual elements of his [duress] defense." *See* Appellee's Br. at 27. By "necessary implication," there isn't a reasonable probability that the jury would have acquitted him based on duress (even if the instructions included verdict-directing language). *See Lentz*, 524 F.3d at 528. So even if counsel erred in not objecting to the lack of verdict-directing language—and we don't think they did—Treminio-Tobar can't show prejudice under *Strickland*.

## III.

The issues here are governed by the law of the case we established on Treminio-Tobar's direct appeal, and he hasn't offered a persuasive reason to depart from our earlier decision. We therefore affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in our decision.

*AFFIRMED*

13